UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
KEITH STOKES, :
:
                    Petitioner, : 18-CV-3637 (JMF)
:
      -v- : MEMORANDUM OPINION
: AND ORDER
JAMIE LAMANNA, :
:
                    Respondent. :
:
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

      Keith Stokes, a state prisoner proceeding without counsel, petitions for the writ of habeas corpus pursuant to Title 28, United States Code, Section 2254. ECF No. 2 ("Pet."). Stokes was convicted in state court, following a jury trial, of murder in the second degree, robbery in the first degree, and robbery in the second degree and sentenced principally to prison for a term of twenty-five years to life. In his Petition, Stokes raises three arguments that he raised, without success, on direct appeal: that the state trial court erred by (1) denying a request for substitute counsel; (2) improperly responding to an inquiry from the jury; and (3) refusing to sever his trial from that of his codefendant. For the reasons that follow, the Petition is denied.

## BACKGROUND

      Stokes and his brother Ralph Stokes ("Ralph") were convicted of the robbery and murder of Charles Romo in his New York apartment. Surveillance footage captured Ralph entering Romo's apartment on January 27, 2013, at approximately 10:15 p.m. Trial Tr. 657. About an hour later, Stokes joined Ralph at the apartment at Ralph's request. *Id.* at 598-99, 659-60, 853-54, 871-72. The two emerged at 12:05 a.m., with Ralph carrying a mesh bag filled with objects.

*Id.* at 661-63. A cooperating witness testified that Stokes had blood on his clothing and an injured hand. *Id.* at 626-27, 860-61, 980. She further testified that, when asked about his hand, Stokes stated, "[t]hat motherfucker wouldn't shut up. I had to punch him so fucking hard that I busted his ear." *Id.* at 621, 627-28, 869. Romo was found dead in his apartment the next morning. *Id*. at 53-54. Notably, an autopsy found that Romo's left ear had essentially been ripped in half. *Id.* at 181. Moreover, Stokes's DNA was found in several places, including a blood stain on Romo's refrigerator door. *Id.* at 1011-13, 1016-19, 1024-25, 1041-42, 1075.

On April 15, 2014, a jury found Stokes guilty of murder in the second degree and robbery in the first and second degrees. On May 1, 2014, he was sentenced to twenty-five years to life in prison. *Id.* at 2395. To the extent relevant here, Stokes, through counsel, raised three arguments on direct appeal. First, he contended that the trial court had wrongfully denied an application he had made on the eve of trial for new counsel. ECF No. 12-1 ("App."), Ex. D, at 40. Second, he asserted that the trial court improperly responded to a question from the jury about whether "a person [could] be guilty of robbery in the second degree" if the "victim were deceased prior to arrival." *Id*. at 37, 44. And finally, Stokes claimed that the trial court had erroneously denied his motion to sever his trial from Ralph's on the basis that each of their defenses was "in irreconcilable conflict with the other." *Id.* at 53.

On April 13, 2017, the Appellate Division, First Department, unanimously affirmed Stokes's conviction and rejected his claims. *See People v. Stokes*, 52 N.Y.S.3d 326, 327 (N.Y. App. Div. 2017). To the extent relevant here, the appellate court held, first, that the trial court had "providently exercised its discretion in denying [Stokes]'s request for new counsel, which was made on the eve of trial, and in the context of a meritless request for a last-minute adjournment." *Id.* Second, the appellate court held that the trial court had provided a

2

sufficiently "meaningful response" to the jury given that the jury had "asked a legal question in a form that, in the context of the case, was too abstract to answer." *Id.* at 328. And third, the appellate court held that the trial court had "providently denied" Stokes's severance motion because the brothers' defenses "were not in 'irreconcilable conflict'" and "there was no significant danger that 'the conflict alone would lead the jury to infer defendant's guilt.'" *Id.* (quoting *People v. Mahboubian*, 543 N.E.2d 34, 39 (N.Y. 1989)). Stokes sought leave to appeal to the New York Court of Appeals, but his application was denied on June 26, 2017. *See People v. Stokes*, 86 N.E.3d 264 (N.Y. 2017).

## DISCUSSION

As a general matter, the writ of habeas corpus may be granted "with respect to any claim that was adjudicated on the merits in State court proceedings" only if (1) the state court's denial of petitioner's claim "resulted in a decision that was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States"; (2) the state court's denial of relief "resulted in a decision that . . . involved an unreasonable application of[ ] clearly established Federal law, as determined by the Supreme Court of the United States"; or (3) the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Cruz v. Superintendant*, No. 13-CV-2414 (JMF), 2016 WL 2745848, at *5-6 (S.D.N.Y. May 11, 2016). Applying these deferential standards here, the Court easily concludes — substantially for the reasons set forth in Respondent's memorandum of law, *see* ECF No. 13 — that Stokes's three claims lack merit and that his Petition for habeas corpus must be denied.

Stokes's first claim — based on the trial court's denial of his request for new counsel on the eve of trial — fails at the outset because the Supreme Court "has not articulated a standard

3

for deciding a Sixth Amendment claim based on a habeas petitioner's allegation that the trial court denied his request for substitute counsel." *Zuniga v. Lamana*, No. 18-CV-5717 (LGS) (JLC), 2019 WL 4124416, at *7 (S.D.N.Y. Aug. 30, 2019) (internal quotation marks omitted). Thus, the claim "is not cognizable for purposes of habeas review," absent extreme circumstances that would rise to the level of a due process violation based on established Supreme Court jurisprudence. *See id.* In any event, to the extent the claim is cognizable, it fails. A trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006) (citation omitted). More relevant here, "[o]n the eve of trial, just as during trial, a defendant can only substitute new counsel when unusual circumstances are found to exist, such as a complete breakdown of communication or an irreconcilable conflict." *United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997). In fact, "it is not enough to *allege* a conflict. 'The defendant must demonstrate an objectively legitimate reason for his lack of confidence in appointed counsel.'" *Ward v. Capra*, No. 17-CV-0704 (ARR), 2019 WL 2302351, at *6 (E.D.N.Y. May 30, 2019) (quoting *Stephens v. Costello*, 55 F. Supp. 2d 163, 171 (W.D.N.Y. 1999)). Given these principles, the Court cannot say that the trial court erred in denying Stokes's request on the eve of trial, let alone that the appellate court's decision affirming that denial was either "contrary to . . . clearly established Federal law" or "an unreasonable application of[] clearly established Federal law." 28 U.S.C. § 2254(d).

Stokes's second claim — that the trial court gave an improper response to the jury's question — also falls short. "In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law," a petitioner "must show not only that the instruction misstated state law but also that the error violated a right

4

guaranteed to him by federal law." *Smith v. Herbert*, 275 F. Supp. 2d 361, 369 (E.D.N.Y. 2003) (quoting *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir. 1985)). That is, "[t]he question is not whether the trial court gave a faulty instruction, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001) (internal quotation marks omitted). Applying those standards here, the Court cannot conclude that the state courts erred, let alone erred to a degree that would justify habeas relief. The jury's question — whether "a person [could] be guilty of robbery in the second degree" if the "victim were deceased prior to arrival" — was ambiguous and confusing, as the jury itself more or less acknowledged. Under the circumstances, the trial court's response (that the answer was "both yes and no, depending upon the facts as you find them to be and depending upon how you apply those facts to the law as I have given it to you," Trial Tr. 1558, 1544) — when considered in conjunction with its other instructions, as it must be, *see, e.g.*, *California v. Brown*, 479 U.S. 538, 541 (1987) — cannot be deemed erroneous. *See, e.g.*, *Boyde v. California*, 494 U.S. 370, 383 (1990) ("Even were the language of the instruction less clear than we think, the context of the proceedings would have led reasonable jurors to believe that [the] evidence . . . could be considered . . . ."). On top of that, the trial court invited a more specific question from the jury, an invitation the jury did not accept. *Stokes*, 52 N.Y.S.3d at 328; *see Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (noting that "a jury is presumed to understand a judge's answer to its question," especially when they have failed to inquire further). Finally, even if the question showed that the jury was considering the defense theory, as Stokes argues, the nature of the instruction allowed the jury to credit that theory. Thus, Stokes did not suffer a due process violation as a result of the trial judge's instruction and his second claim must be denied.

5

Stokes's third claim — that the trial court erred in denying his request for a severance from his brother — is also easily rejected. In general, the question of "whether to grant a severance is committed to the sound discretion of the trial judge." *Grant v. Hoke*, 921 F.2d 28, 31 (2d Cir. 1990) (internal quotation marks omitted). Moreover, "joinder rules are a matter of state law and federal *habeas corpus* relief does not lie for errors of state law." *Allen v. New York*, No. 13-CV-0991 (JJM), 2016 WL 5928817, at *7 (W.D.N.Y. Oct. 12, 2016) (internal quotation marks and brackets omitted). Thus, "[a] trial court's denial of a severance motion is considered 'virtually unreviewable.'" *Mercedes v. Herbert*, No. 01-CV-1359 (DC), 2002 WL 826809, at *5 (S.D.N.Y. Apr. 30, 2002) (quoting *United States v. Friedman*, 864 F.2d 535, 563 (2d Cir. 1988)). Indeed, a federal court may grant habeas relief only where the denial of a severance motion rises to the level of a due process violation. *See, e.g.*, *Allen*, 2016 WL 5928817, at *7. That is not the case here. Stokes's defense (that, if Ralph killed Romo, he did so alone given when Stokes appeared on the scene) was not incompatible with his brother's defense (that he did not kill Romo at all) and, as the appellate court noted, "there was no significant danger that the conflict alone would lead the jury to infer defendant's guilt." *Stokes*, 52 N.Y.S.3d at 328 (internal quotation marks omitted). Further, "[n]either defendant acted as a second prosecutor regarding the other defendant, and in their cross-examination of witnesses and summations, neither defendant developed the inconsistency in their defenses to a point where it created prejudice." *Id.* Accordingly, Stokes's third claim must be and is denied.

## CONCLUSION

At bottom, Stokes does little more than seek to relitigate the same arguments he raised on direct appeal. He does not show, however, that the state court erred in rejecting those arguments,

let alone that it did so in a manner that would permit relief under the standard applicable in a federal habeas proceeding. Accordingly, Stokes's Petition must be and is DENIED.

As Stokes has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue at this time. *See* 28 U.S.C. § 2253(c); *see also, e.g.*, *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012). In addition, this Court certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this Order would not be taken in good faith, and *in forma pauperis* status is thus denied. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to mail a copy of this Memorandum Opinion and Order to Stokes and to close this case.

SO ORDERED.

Dated: March 3, 2020
New York, New York

_____
JESSE M. FURMAN
United States District Judge